# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROBERT M. BRY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 4:14-cv-1501 RLW |
| ) | |
| CITY OF FRONTENAC, MISSOURI, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION
## FOR HEARING AND SANCTIONS DUE TO
## DESTRUCTION OF CRITICAL EVIDENCE

The "Frontenac Police" – the City of Frontenac and its police officers Timothy Barnett, Rex Baumgartner, Matthew Brune, Jeremy Newton, James Ford, Cody Loveless and Brian Wuertz – admit engaging in wholesale destruction of evidence. The evidence that the Frontenac Police deliberately destroyed includes recordings from dashboard cameras, interview rooms, and telephone calls. These were recordings of the purported crime scene, interrogations, and the police investigation that led to the felony charge later brought against plaintiff Robert Bry. Further, the Frontenac Police deliberately destroyed this evidence – all potential *Brady* materials – despite a pending discovery request from Mr. Bry seeking such recordings in the then-pending felony case.

Mr. Bry has sought an evidentiary hearing related to that destruction of evidence, so this Court may decide what sanctions should be imposed. The Frontenac Police's Response offers no credible, coherent explanation for the destruction of evidence. Rather, the Frontenac Police's Response opens gaps and leaves questions that make such a hearing (and ultimately imposition of sanctions) even more appropriate. Accordingly, this Court should grant Mr. Bry's Motion for

Hearing and Sanctions without delay and assess what sanctions should be imposed.

### I. Critical evidence has been destroyed.

Frontenac Police testified that (many of) their police cars record events and audio through dashboard cameras whenever the police car's emergency lights are on. *See* Officer Wuertz Testimony, Exhibit 6 of Motion, at 23:14-27:5. Also, Frontenac Police testified that the dashboard cameras used by Frontenac police officers connect to audio recorders located on the officers themselves. *See id*.

Police car emergency lights were flashing during the evening surrounding Mr. Bry's arrest on September 13, 2013. *See, e.g.*, Sheila Hoffman Affidavit at ¶4. Presumably, Frontenac Police therefore would have at minimum recorded Officer Brune's conversations with Mr. Bry on Mr. Bry's front porch and Robin Bry's screaming and threats against police officers when the police escorted her past their squad cars – even if video of such actions was not captured on the dashboard cameras, because the Frontenac Police cars were pointed in the wrong direction.

The Frontenac Police also regularly record telephone calls originating at the police station and interviews conducted in the police station interview rooms. *See, e.g.,* Lieutenant Baumgartner Testimony, Exhibit 9, at 16:1-21 (recording of outgoing telephone calls); Officer Ford Testimony, Exhibit 4 of Motion, at 36:13-24 (recording of interrogations).

If all these recordings had been preserved, it would be easy to know what happened, what was said and done and by whom. It would be easy to know the truth, whether that truth was that the Frontenac Police behaved properly (as they claim) or whether they engaged in a conspiracy to and did violate Mr. Bry's rights, bringing baseless charges against him because of their illegal animus against him (as Mr. Bry claims).

We will never know, however, because apparently the Frontenac Police caused or

allowed all the recordings of the crime scene, the interview room interrogations, and their telephone calls to be destroyed no more than sixty days after Mr. Bry's arrest. *See* Frontenac's Response, at 8. Further, Frontenac Police allowed or caused such wholesale destruction of evidence to occur despite service by Mr. Bry's criminal defense attorney Scott Rosenblum of a document request twelve days after Mr. Bry's arrest, and presumably at least forty-eight days prior to the recordings being destroyed. *See* Request for Discovery, Exhibit 2 of Motion, at ¶2.

**II.     The Frontenac Police offer no proof critical evidence was <u>not</u> destroyed.**

The Frontenac Police offer a host of excuses why the recordings may not have been critical evidence. Such excuses, however, leave more holes than comfort. Specifically:

- The Frontenac Police claim not all police cars had dashboard cameras. Frontenac Police Response at 6. But they admit some police cars had dashboard cameras. *See id.*

- Certain Frontenac Police argue that, to the "best of [their] recollection," their police cars were pointed the wrong way. Officer Ford Affidavit, Doc. No. 50-4, at 1-2; Officer Brune Affidavit, Doc. No. 50-7, at 1-2. Again, this may be true – even though at minimum Officers Brune and Ford lack some confidence in this claim. *See id.* Yet, even if true, the direction the cameras were pointing does not explain why the cameras may not have captured other relevant information, such as the presence of other witnesses, or why the audio-recording systems would not have recorded Mr. Bry's conversations with Officer Brune, Ms. Hoffman's conversation with Officer Barnett, or Robin Bry's ranting and threats against police, all of which potentially occurred near the audio-recording systems associated with the dashboard cameras.

- The Frontenac Police mention they were personally present, or included various details in their reports, without indicating why such statements explain the absence of recordings. Both Officers Brune and Ford state they were "personally on the scene," and that the "events which transpired were recorded in officer narratives contained in the incident report." Brune Affidavit at ¶5; Ford Affidavit at ¶5. Yet this does not explain the absence of recordings. Rather, as noted earlier, it suggests recordings should be available, because the dashboard cameras were linked to audio recorders on each officer's person. *See* Officer Wuertz Testimony at 23:14-27:5.

- The Frontenac Police admit that interview room conversations may also have been taped, Ford Transcript, Exhibit 4 of Motion, at 36:13-24, but the Frontenac Police claim both Mr. Bry and Robin Bry invoked their Fifth Amendment rights. The Frontenac Police's excuse does not prove the tapes were worthless. In fact, other evidence suggests that, in the interview rooms, Robin Bry incriminated herself and that Officer Ford told Mr. Bry that Mr. Bry had violated the law by breaking into and entering his own house. Bry Affidavit, Exhibit 8 of Motion, at ¶4; Hoffman Affidavit, Exhibit 1 of Motion, at ¶18. Further, Officer Brune is not sure where he spoke to Robin Bry or whether, if the conversation did occur in the interview room, the recording button had pushed. Frontenac Police Response at 13. The apparent destruction of all interview room recordings prevents further investigation into such matters.

- Evidence now indicates a several-hour gap between when Frontenac Police originally presented the case for felony charges and when Mr. Bry was charged,

as well as a potential inconsistency between the Frontenac Police reports and the prosecuting attorney's record regarding whether the County Prosecuting Attorney considered bringing a criminal charge against Robin Bry. *See* David Truman Testimony, Exhibit 10, at 39:1-40:4; *see also* Truman Letter, Exhibit 11. Evidence also indicates that the Frontenac Police telephoned Ms. Hoffman and may have spoken to Robin Bry during that several-hour period. *See* Hoffman Affidavit, at ¶18. The Frontenac Police, however, have apparently destroyed any recordings of such communications, depriving Mr. Bry of having any opportunity to determine what may have happened or why.[1]

Potentially telling, for example, is that Ladue Police Officer Christopher Lo recalls Robin Bry telling Officer Lo, "I'm gonna f***ing kill you." *See* Officer Lo Testimony, Exhibit 12, at 23:22-24:8 (language edited). Mr. Bry has learned of this statement, itself evidence of a crime committed by Robin Bry and highly probative of her mental state, only by deposing the only non-Frontenac police officer that Mr. Bry knows was present on September 13, 2013. None of the Frontenac Police, the very people Mr. Bry has averred were out to get him and to destroy his life, recall hearing this statement or included it in their police reports. By destroying their recordings, the Frontenac Police have deprived Mr. Bry of a potential treasure trove of other statements and information the Frontenac Police omitted from their reports and their testimony.

---

[1] Regarding the recording of telephone calls, Frontenac Police Chief Thomas Becker avers that Frontenac Police department is not a 911 call center and therefore Frontenac "does not have a recording system . . . that records every call." *See* Affidavit of Chief Thomas Becker, Doc. No. 50-11, at ¶4. Noticeably absent from Chief Becker's Affidavit is a claim that the Frontenac Police record no calls – an averment that Lieutenant Rex Baumgartner's testimony would contradict – or that no calls were recorded related to the Bry case.

### III. The destroyed evidence was responsive to discovery – and relevant.

The Frontenac Police also try to justify their apparent wholesale destruction of evidence by claiming the evidence, "if any ever existed," was not "relevant, material, or probative." Frontenac Police Response at 6-7. This excuse rings hollow for four reasons.

First, the destroyed recordings all related to a felony criminal prosecution filed on September 13, 2013, the very date of the incident, and before Mr. Bry was bonded out of jail. Clearly the recordings were "relevant," at least as that term is used in the Missouri Rules of Criminal Procedure and the Federal Rules of Civil Procedure, because these recordings were tangible things whose production would reasonably lead to the discovery of admissible evidence regarding what happened on September 13. Recordings of Mr. Bry's and his wife Robin Bry's communications and demeanor would be relevant and probative to Mr. Bry's claim that he was innocent, had only been defending himself, and should never have faced criminal charges. In addition, even if the tapes themselves are not relevant or admissible – a conclusion Mr. Bry would greet with incredulity – the tapes might have helped reveal additional relevant information, for example the presence of witnesses watching the events from whom Mr. Bry could seek information. Without the recordings, such information is irretrievably lost.

Second, by September 25, 2013, Mr. Bry had already propounded discovery in the felony case, seeking all recordings from the events on September 13, 2013. *See* Exhibit 2 of Motion, at ¶2. Thus, even if the Frontenac Police are correct that the recordings are not "relevant," the recordings would still be responsive. The Frontenac Police offer no explanation why, after receiving Mr. Bry's discovery in the felony case, they still thought they could destroy (or allow the destruction) of all recordings, when those recordings were clearly responsive to discovery. The Frontenac Police also never explain why the County prosecutors had not already received

and produced copies of the recordings, as Mr. Bry's discovery requested. *See id.* The Frontenac Police claim that they have a Department policy, and indicate they implemented their policy unilaterally to destroy recordings of the crime scene and interrogations of a defendant in a pending felony case, without input from County prosecutors regarding that destruction. *See* Frontenac Police's Response, at 7-8. If true, the Frontenac Police's actions are disturbing on numerous levels. The recordings were not only responsive to discovery, they were potentially exculpatory evidence protected under *Brady* and related precedent. *See, e.g.*, *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding the prosecution's suppression of evidence favorable to an accused constitutes a due process violation, "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). Destruction of these materials within sixty days after the arrest – or in November 2013 or earlier, therefore, could lead to criminal charges under Missouri Revised Statute § 575.100; disciplinary charges against the prosecutor under Missouri Supreme Court Rules 4-3.4(a) and 4-3.8(d); and other serious adverse consequences for the Frontenac Police and the County Prosecuting Attorney.

Third, the Frontenac Police do not identify and offer testimony from someone willing to state that he or she reviewed all the recordings before the recordings were destroyed and confirmed that in fact there was nothing "relevant, material, or probative" on any of the recordings. If such a person does exist, Mr. Bry would like to depose that person – or have that person subpoenaed to appear at the requested evidentiary hearing – to learn why the tapes contained no relevant information. And should such a person not exist, then the Frontenac Police's statements that the tapes did not contain relevant, probative, and material information are merely wishes, not statements made based upon personal knowledge and belief.

Fourth and finally, the Frontenac Police forfeited any ability to argue whether or not the recordings were relevant when the Frontenac Police caused or allowed the recordings to be destroyed. As Mr. Bry noted in his original Memorandum, "[T]he relevance of [evidence] and resulting prejudice from destruction of [that evidence] cannot be clearly ascertained because the documents no longer exist." Bry Memorandum at 4 (quoting *Alexander v. National Farmers Organization*, 687 F. 2d 1173, 1205 (8th Cir. 1982). The destruction of the evidence is itself "precisely the problem." *Id.* (citing *Ameriwood Indus. v. Liberman*, 2007 WL 5110313, at * 7 (E.D. Mo. July 3, 2007); *see also Process Controls v. Emerson Process*, 2011 WL 5006220, at * (E.D. Mo. Oct. 20, 2011)). The Frontenac Police are effectively trying to admit that they destroyed the recordings, but then excuse their illegal destruction of evidence with soothing speculation that the recordings were not that good for Mr. Bry anyway. The Rules of Civil Procedure and law of spoliation, as well as criminal prohibitions against the destruction of evidence, make clear it is not the Frontenac Police's place to decide what would or would not have been helpful to Mr. Bry's case.

**IV.     The law of spoliation requires only intent and prejudice for severe sanctions to be imposed, elements the Frontenac Police have readily satisfied.**

In his Motion, Mr. Bry requests an evidentiary hearing and discovery sanctions for the intentional destruction of evidence. Imposing such sanctions requires only a "finding of intentional destruction indicating a desire to suppress the truth. Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Fidelity National Title Insurance Co. v. Captiva Lake Investments, LLC*, 2015 U.S. Dist. LEXIS 1350, *6 (E.D. Mo. Jan. 7, 2015) (internal quotation marks and internal citations omitted). In order to impose sanctions, the Court must also make a finding of prejudice.

*Id.* As discussed previously, the Frontenac Police's conduct easily satisfies the *Fidelity* test.

Trying to avoid such a ready conclusion, the Frontenac Police argue instead that the three-factor test set forth in *Lewy v. Remington Arms Co.*, 836 F.2d 1104 (8th Cir. 1988) applies: whether (1) the Frontenac Police's record retention policy was reasonable, (2) lawsuits or complaints have been filed concerning the type of records at issue, and (3) the retention policy was instituted in bad faith. *See* Response, Doc. No. 50, at 6-8. The *Lewy* test, however, is not relevant here. It is used only to evaluate whether a court should read an adverse inference jury instruction when a party fails to produce evidence at trial. *See Lewy*, 836 F.2d at 1111-13.

Yet, even if the *Lewy* test did apply, the Frontenac Police would fail that test. The Frontenac Police claim they followed their policy when destroying responsive and potentially exculpatory evidence after receiving discovery in a pending felony case. If the Frontenac Police policy allows – and actually called for – destruction of such evidence in those circumstances, it would constitute a policy requiring violations of constitutional rights and risking severe sanctions for the Frontenac Police and the Frontenac and County prosecuting attorneys. Such a policy could not be reasonable, negating the first *Lewy* factor.

The second *Lewy* factor, meanwhile, is focused on whether the party destroying the evidence could reasonably expect that the evidence was important. In *Lewy*, because the destroyed records were customer complaints, the Eighth Circuit focused on whether there had been previous litigation involving customer complaints. *See Lewy*, 836 F.2d at 1112. In the present case, clearly dashboard camera and interview room recordings are regularly used in criminal cases to show waiver of Fifth Amendment rights, signs of intoxication in driving while intoxicated prosecutions, and – in cases like this – the conduct of a person charged with a felony during the arrest and interrogation. Moreover, virtually every criminal case – and Mr. Bry's own

case – involves a request from the defendant for recorded statements. Frontenac was clearly on notice that it should have preserved recorded statements.

For the third *Lewy* factor, Frontenac tries to claim there was no bad faith because the recordings were irrelevant and immaterial. *See* Frontenac Police Response at 8. As discussed earlier, the claim the recordings were not relevant or material is imbecilic. Yet, even if these arguments had some cohesion, "[a]n explicit finding of bad faith is not required to impose sanctions on a party that destroys specifically-requested evidence after litigation has commenced." *Fidelity*, 2015 U.S. Dist. LEXIS 1350, *6 (citing *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010)). In the present case, Frontenac destroyed specifically requested evidence – the recorded statements – when a felony case was pending and the recordings had been requested in discovery. Therefore, all three *Lewy* factors are in fact satisfied.

**V.    Mr. Bry has adequately demonstrated prejudice from the wholesale destruction of recordings.**

Mr. Bry has already demonstrated throughout his Motion, Supporting Memorandum, and this Reply why and how he was prejudiced by Frontenac's intentional destruction of evidence, and he re-incorporates those arguments herein. In short, Mr. Bry has been prejudiced by Frontenac's intentional destruction of recordings that would have been critical to this lawsuit. The recordings that have been destroyed were the only recordings contemporaneous to the events they recorded. This alone should suffice under *Stevenson v. Union Pacific Railroad*, 354 F.3d 739, 748, (8th Cir. 2004) (finding prejudice, even if there is "no indication that the voice tape destroyed contained evidence that could be classified as a smoking-gun," because a destroyed tape that was the "only recording of conversations . . . contemporaneous with the accident renders its loss prejudicial to the plaintiffs").

As a final note, the Frontenac Police themselves admit the "requisite element of prejudice is satisfied by the nature of the evidence destroyed in this case." Frontenac Police Response at 3. Mr. Bry fully agrees fully with the Frontenac Police on this point.

**VI.    Frontenac had adequate notice of Sheila Hoffman's involvement.**

The Frontenac Police complain about Sheila Hoffman's involvement. Mr. Bry did not disclose Ms. Hoffman in his first set of initial disclosures. But neither did the Frontenac Police. The Frontenac Police plainly knew of her role as a witness, including because Officer Barnett and Lieutenant Baumgartner spoke with her on September 13, 2013, and Ms. Hoffman is named in the Frontenac Police reports. Mr. Bry did not and could not produce the voicemails she has, because Mr. Bry did not and still does not have those recordings in his possession. Moreover, the tapes only became relevant as rebuttal materials when Frontenac Police testified (falsely) no calls had been made. Finally, there is no apparent connection between Ms. Hoffman and the Frontenac Police's destruction of tapes. The Frontenac Police attempt to use Ms. Hoffman as the classic red herring.

**VII.    Counsel adequately conferred.**

The Frontenac Police argue Mr. Bry has not complied with Local Rule 37-3.04. But Mr. Bry's counsel and the Frontenac Police's counsel Michael Langella conferred in person regarding the missing recordings during the deposition of Officer Ford, then abruptly suspended the deposition at the next break to allow for location and production of the missing records and production of certain other documents. *See* Officer Ford Transcript at 35-37, Exhibit 13 (holding an off-the-record discussion immediately following testimony about recordings), *and id.* at 50 (suspending the deposition pending production of additional records). In addition, numerous emails were exchanged about the apparently missing recordings, until finally on June 9, 2015,

the lead counsel for the Frontenac Police Peter Dunne reported that all tapes were destroyed approximately sixty to ninety days after Mr. Bry's arrest. (*See* Email from Mr. Dunne dated June 9, 2015 and earlier messages, Exhibit 7 of Motion.) Mr. Dunne's email suggests there was nothing further to discuss. Destroyed recordings cannot be produced.

Finally, in light of the fact Mr. Bry's Motion concerns apparent unlawful destruction of evidence, it may not even constitute a "discovery motion" such that the meet-and-confer requirement in Local Rule 37-3.04 would apply. *See Silvestri v. GMC*, 271 F.3d 583, 590 (4th Cir. 2001) (discussing that, while Rule 37(b)(2) is relevant, a sanction for spoliation of evidence actually flows from a federal court's inherent power to control the judicial process). Accordingly, the Frontenac Police's intentional destruction of evidence is properly before this Court.

## VIII. Conclusion.

According to the testimony of the Frontenac Police, they made or should have made a half dozen or more recordings of the events central to Mr. Bry's lawsuit. If Frontenac had destroyed just one of these recordings, it likely would have been enough to warrant serious sanctions. Yet here the Frontenac Police admit wholesale destruction of all the relevant recordings in their possession, during a pending criminal case and despite a pending, applicable discovery request. The Frontenac Police have engaged in a violation of Mr. Bry's constitutional right to exculpatory information, and have engaged in deliberate, serious misconduct relating to the destruction of evidence. This conduct reinforces Mr. Bry's claim that the Frontenac Police set out to and did violate his rights, and are now trying to cover up their deliberate unlawful action with deliberate destruction of relevant evidence. Accordingly, this Court should hold the requested evidentiary hearing and, upon receiving adequate evidence of the Frontenac Police's

intentional wrongdoing, impose the most severe sanctions against all Frontenac Police defendants.

Respectfully submitted,

DOWNEY LAW GROUP LLC

/s/ Michael P. Downey
Michael P. Downey   #47757MO
49 North Gore Avenue, Suite 2
Saint Louis, Missouri 63119
314.961.6644
mdowney@downeylawgroup.com

**BICK & KISTNER, P.C.**
Elkin L. Kistner         #35287MO
Patricia A. Hageman      #43508MO
101 South Hanley Road, Suite 1280
St. Louis, Missouri 63105
Telephone: (314) 571-6823
Facsimile: (314) 727-9071
E-mail: elkinkis@bick-kistner.com

*Counsel for Plaintiff Robert Bry*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 5, 2015, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which served notification of this filing to the following counsel of record:

Peter J. Dunne
Robert T. Plunkert
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
dunne@pspclaw.com
plunkert@pspclaw.com

*Attorneys for the Frontenac Police Defendants*
*(The City of Frontenac and Officers Brune, Barnett, Baumgartner, Newton, Ford, Loveless & Wuertz)*

/s/ Michael P. Downey