## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ROBERT M. BRY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) No. 4:14-CV-1501 RLW |
| | ) |
| v. | ) |
| | ) |
| CITY OF FRONTENAC, et al., | ) |
| | ) |
| Defendants. | ) |

## AMENDED MEMORANDUM AND ORDER

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 101) and Defendants' Motion for Summary Judgment (ECF No. 127). These matters are fully briefed and ready for disposition.

## BACKGROUND

On September 13, 2013, Plaintiff Robert Bry ("Plaintiff") called 911 emergency services and indicated that his wife Robin (Wolfsberger) Bry ("Robin") had attacked him with a knife. (Defendants' Statement of Uncontroverted Material Facts in Support of Their Motion for Summary Judgment ("DSUMF"), ECF No. 129, ¶1). Frontenac Police Officer Matthew Brune responded to the call and arrived at 10364 Conway Road, Frontenac, Missouri 63131. (DSUMF, ¶2). Officer Brune encountered Plaintiff, who was bleeding from his pinky finger. (DSUMF, ¶2). Frontenac Police Officer James Ford responded to the scene and observed a large amount of blood inside the house and on the street. (DSUMF, ¶3). Officer Ford also observed two long kitchen knives lying on the floor, both of which had blood on or near them. (DSUMF, ¶4). Plaintiff told the Frontenac Officers that he grabbed a knife because he thought it would keep Robin away from him. (DSUMF, ¶5). Plaintiff told the Frontenac Officers the direction that

Robin had run away from the residence. (DSUMF, ¶6). Frontenac Officers, with the assistance of Ladue Police Officer Chris Lo, searched the area for Robin. (DSUMF, ¶7). Officer Lo located Robin a few houses away, behind a construction dumpster. (DSUMF, ¶8). Robin was dressed only in a nightgown, was crying, had no shoes on, and her hands were covered in blood. (DSUMF, ¶9). Robin had a cut on her hand and she was taken to Mercy Hospital for treatment. (DSUMF, ¶10). Robin told Officer Brune that she and Plaintiff hard argued and Plaintiff was either chased or kicked out of the house by Robin. (DSUMF, ¶11). Robin also told Officer Brune that Plaintiff had re-entered the house. (DSUMF, ¶12). The police report indicates that Robin told Officer Brune that Plaintiff approached her with a knife and she used a knife to defend herself. (DSUMF, ¶12).

Both Robin and Plaintiff were arrested on September 13, 2013. (DSUMF, ¶14). The Frontenac Police Report was presented to the St. Louis County Prosecuting Attorney Warrant Office for possible criminal charges. (DSUMF, ¶15). Assistant Prosecuting Attorney David Truman ("Truman") reviewed the case for the warrant office and decided to issue the charge of second degree assault against Plaintiff. (DSUMF, ¶¶15, 17). Truman prepared the criminal complaint, warrant documents, and probable cause statement. (DSUMF, ¶18). The complaint, warrant documents, and probable cause statement were given to St. Louis County Judge Michael Burton, who issued a warrant for Plaintiff's arrest. (DSUMF, ¶¶19, 20). Assistant Prosecuting Attorney Megan Julian presented the matter to a St. Louis County Grand Jury, and the grand jury indicted Plaintiff on the charge of domestic assault-second degree on October 30, 2013. (DSUMF, ¶22). The grand jury returned a true bill and found probable cause to arrest Plaintiff for domestic assault-second degree. (DSUMF, ¶23).

Plaintiff's Second Amended Complaint alleges claims for Violation of Plaintiff's Rights under the Fourth and Fourteenth Amendments to the United States Constitution against the Police Officer Defendants (Defendants Newton, Ford, Loveless, Wuertz, Brune, Barnett, and Baumgartner) (Count I), Liability of the City of Frontenac for Violating Plaintiff's Rights under the Fourth and Fourteenth Amendments to the United States Constitution (Count II), False Arrest under Missouri State Law against the Police Officer Defendants (Count III), Malicious Prosecution under Missouri State Law against the Police Officer Defendants (Count IV), Conspiracy to Violate the Constitutional Rights of Plaintiff against the Police Officer Defendants (Count V), and Conspiracy to Violate the Constitutional Rights of Plaintiff by Defendants (Count VI).

## I.    MOTION TO DISMISS

### A.  Standard of Review

In ruling on a motion to dismiss or a motion for judgment on the pleadings, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Huang v. Gateway Hotel Holdings*, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

B. Discussion

Defendants argue that Plaintiff's claims against the defendant police officers in their official capacities should be dismissed because such a claim is really against the City of Frontenac. In Plaintiff's opposition, he states that any claims against the defendant police officers in their official capacities should be construed as against the City of Frontenac. Therefore, the Court denies the Motion to Dismiss without prejudice.

## II.    MOTION FOR SUMMARY JUDGMENT

A. Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of

- 4 -

material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

B. Discussion

**1. Count I**

In Count I, Plaintiff alleges that the Frontenac Officer Defendants violated Plaintiff's constitutional rights when they arrested, detained and prosecuted Plaintiff without probable cause and without a warrant. (SAC, ¶20).

a. Existence of Probable Cause

Plaintiff contends that the officers did not have probable cause to arrest him for the offense of domestic assault-second degree. The offense of domestic assault-second degree requires that a person (1) knowingly causes physical injury to such domestic victim by any means, including but not limited to, use of a deadly weapon or dangerous instrument, or by choking or strangulation; or (2) recklessly causes serious physical injury to such domestic victim; or (3) recklessly causes physical injury to such domestic victim by means of any deadly weapon. R.S. Mo. § 565.073.1. A "domestic victim" is defined as a "household or family member[.]" R.S.

Mo. § 565.002.1(6). Plaintiff maintains that the totality of the circumstances did not establish that Plaintiff caused physical injury to Robin as the statute requires. Based upon the undisputed parts of the record, however, the Court concludes that a reasonable officer could have believed that Plaintiff had knowingly caused physical injury to Robin, his spouse.

When Officer Brune arrived at the Bry house, he saw Plaintiff with a relatively minor cut to his pinky. Thereafter, Brune and other officers located Robin, crying and hiding behind a dumpster, clothed only in a nightgown, and hands covered in blood. Officer Brune stated that Robin told him that Plaintiff had fought with her and she had kicked him out of the residence but he re-entered the residence, and she defended herself with a knife. (DSUMF, ¶¶11-12). Plaintiff disputes this fact and maintains that Robin chased him out of the house with a knife and that Robin told Officer Brune that she initiated the altercation with Plaintiff. The Court finds that Robin's physical injuries, as well as other evidence at the scene, support Brune's version of the events and provide sufficient "indicia of reliability." *Joseph v. Allen*, 712 F.3d 1222, 1227 (8th Cir. 2013). Thus, based on the totality of the circumstances, it was reasonable for the officers to believe that Plaintiff was the aggressor and that he had at least *attempted* to cause physical injury to Robin and, therefore, the officers had probable cause to arrest Plaintiff. *Joseph*, 712 F.3d at 1227.

Throughout his briefing, Plaintiff repeatedly relies on the same litany of claims to support his assertion that material facts preclude entry of summary judgment. Plaintiff maintains that the Frontenac Police Report mischaracterized the incident and the evidence and omitted exculpatory evidence. Plaintiff points to the following statements to support his claim that the Frontenac Officers did not have probable cause to arrest him:

- Plaintiff called 911 to report that he had been attacked by his wife. (Plaintiff's Statement of Additional Controverted Material Facts in Opposition to Defendants' Motion for Summary Judgment ("PSUMF"), ECF No. 154, ¶5).

- When Frontenac Police arrived at his house, Plaintiff "stated that his wife had a knife was swinging it at him. He grabbed a knife just to defend himself." (PSUMF, ¶15).

- After the police located Robin, she told Ladue Police Officer Lo, I'm going to f**king kill you." (PSUMF, ¶7). Frontenac Police Sergeant Barnett described Robin's condition as "BAT-SHIT CRAZY." (PSUMF, ¶6). Sergeant Barnett denies making this statement. (ECF No. 152 at 13).

- Officer Lo testified that if Bry had not been handcuffed by police, then she probably should have attacked him. (PSUMF, ¶4).

- The Police Report indicates that Plaintiff attacked Robin in the bedroom of the home, but there was no blood or indication of a struggle in Plaintiff's bedroom. (ECF No. 152 at 7). Plaintiff denies ever re-entering the bedroom before Robin charged him with a knife in her hand. (ECF No. 152 at 7).

- Plaintiff maintains that Robin never told Frontenac Police that Plaintiff cut her or that she was afraid of Plaintiff. (PSUMF, ¶14; *see also* ECF No. 152-53).[1] Likewise, Plaintiff states he never told Frontenac Police that he cut Robin. (PSUMF, ¶13).

First, the Court does not consider the May 7, 2014 email or affidavit of Robin, which were provided in support of Plaintiff's briefing. (ECF Nos. 122-9; 152-3). Robin's statement that she instigated the physical altercation with her spouse is contained in her email to her husband. (ECF No. 152-3). The Court does not consider the email or affidavit of Robin because they were made

---

[1] This statement is based upon Robin's email to her husband Robert Bry. (ECF No. 152-3). As discussed herein, Robin's email cannot be used to create an issue of uncontroverted material fact.

after her statements to police, which were included in the police report, because her email was not made under oath, and because she invoked the Fifth Amendment during her deposition and would not answer questions regarding the email. (ECF No. 167-2). Plaintiff cannot create an issue of material fact by submitting Robin's email and affidavit when these statements conflict with her prior statements to the Frontenac Police Officers and when Robin refused to answer any questions related to the events of September 13, 2013 during a deposition. Because Robin's testimony in the email and affidavit cannot be cross-examined and because they conflict with prior statements made to police, the Court will not consider the email and affidavit in the summary judgment. As the Eighth Circuit has held,

> a party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.

*Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286, 289 (8th Cir. 1988) (internal citations and quotation marks omitted); *cf. Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365-66 (8th Cir. 1983) ("If testimony under oath, however, can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment. A party should not be allowed to create issues of credibility by contradicting his own earlier testimony."); *see also Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (quoting *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.,* 114 F.3d 108, 111 (8th Cir. 1997) ("It is well-settled that '[p]arties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment.'")).

- 8 -

Curiously, Plaintiff argues that Robin's invocation of her Fifth Amendment privilege supports his opposition to Defendants' Motion for Summary Judgment. (ECF No. 168 at 4-5). Plaintiff argues that Robin's "invocation of her privilege establishes that had she answered the questions, the responses would have been adverse to her such that she would have admitted being the aggressor and cutting Mr. Bry with a knife." (ECF No. 168 at 4 (citing *Coquina Investments v. TD Bank, N.A.*, 760 F.3d 1300, 1310-11 (11th Cir. 2014)).[2] Plaintiff, however, improperly assumes that the only reason that Robin would have invoked her Fifth Amendment privilege was because she had been the aggressor. The Court notes that Robin may have invoked her Fifth Amendment privilege to avoid prosecution for perjury based upon conflicting statements made to Frontenac Police and those made in her affidavit. *See* ECF Nos. 122-9 (Affidavit of Robin Wolfsberger); ECF No. 129-1 (Frontenac Police Department Investigative Report); R.S. Mo. §575.040.1 ("A person commits the crime of perjury if, with the purpose to deceive, he knowingly testifies falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public or other officer authorized to administer oaths.").

Plaintiff also asserts that "[a]nother consequence [of] Robin's invocation of the Fifth [Amendment] is that she is deemed to be an unavailable witness for purposes of hearsay exceptions." (ECF No. 168 (citing Fed. R. Evid. 804(a)(1)). *See* Fed. R. Evid. 804(a)(1) ("A declarant is considered to be unavailable as a witness if the declarant: (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies."). Plaintiff maintains that the Court should consider "the substance of Robin's electronic communications because they qualify, pursuant to Federal Rules of Evidence 807, as

---

[2] Plaintiff improperly cites to this case as an Eighth Circuit decision. *See* ECF No. 168 at 4.

exceptions to the ban on admissibility of hearsay." (ECF No. 168 at 4-5 (citing *Estate of Thompson v. Kawasaki Heavy Industries*, 933 F.Supp.2d 1111, 1134-35 (N.D. Iowa 2013)).[3]

Robin may be considered unavailable because she asserted the Fifth Amendment privilege during her deposition. *See California v. Green*, 399 U.S. 149, 168, n.17 (1970) ("The hearsay exception itself has generally recognized that a witness is 'unavailable' for purposes of the exception where through lapse of memory or a plea of the Fifth Amendment privilege, the State cannot secure his live testimony"); *U.S. v. Cole*, 488 F.Supp.2d 792, 810 (N.D. Iowa 2007) (citing *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir.1987) ("a witness who appears but asserts his or her privilege against self-incrimination under the Fifth Amendment to the United States Constitution is, likewise, unavailable under Rule 804(a)(1)). Plaintiff argues that the Court should instead consider Robin's May 7, 2014 email[4] to him to support a finding that material facts preclude entry of summary judgment. However, the Court holds that Robin's unavailability does not mean that the Court must consider her email. At best, the record contains conflicting statements from Robin. Robin's contemporaneous statement to Officer Brune on September 12, 2013 that she was "tired of getting my ass beat by my fucking husband" as well as that Plaintiff had kicked Robin in the head, grabbed and punched her. (ECF No. 129-1 at 4). These statements in the Frontenac Police Report fit within the hearsay exception because they are either an excited utterance or fit within the public records exception. *See* Fed. R. Evid. 803(2), 803(8); *Foster v. General Motors Corp.*, 20 F.3d 838, 839 (8th Cir. 1994) (police report

---

[3] However, in *Estate of Thompson*, the speaker at issue was "'unavailable' owing to his death." *Id.* at 1134.

[4] The Court notes that Robin sent this May 7, 2014 email to her husband shortly because Robert Bry's bond condition of no contact with the victim was removed by Court Order on June 10, 2014 and the criminal case against Robert Bry was dismissed for failure to prosecute on June 23, 2014. (Casenet, last visited on December 16, 2015). Thus, the timing of her email further casts doubt on its probative value.

was "clearly admissible under the hearsay exception for public records"). The Court, making a legal determination, finds that it cannot consider any of Robin's contradictory statements and makes the probable cause determination based upon the undisputed facts in the record. As previously stated, the Court finds that, based upon Robin's physical injuries, as well as other evidence at the scene, there was sufficient evidence to arrest and prosecute Plaintiff for domestic assault—second degree.

Moreover, even if Plaintiff's other additional facts were to be included and believed, the Court finds that there was still probable cause to believe that an offense was committed. *Bowden v. Meinberg*, No. 14-3074, 2015 WL 5011636, at \*4 (8th Cir. Aug. 25, 2015). The Frontenac Police Officer's subjective beliefs or motivations are irrelevant to whether the Police Report and probable cause affidavit included sufficient facts to establish probable cause. *Bowden*, 2015 WL 5011636, at \*3. Whether probable cause exists is an objective question of law. *Id.* Similarly, statements related to Robin's demeanor after the incident have little bearing on whether she was the instigator of the attack. The Court notes that her demeanor could have been the result of being involved in a physical altercation with her spouse. Likewise, Plaintiff relies on the testimony of Sheila Hoffman to buttress his claim that the Frontenac Police Officers were out to get Plaintiff. Ms. Hoffman also testified that she did not tell Lt. Baumgartner that she was "very fearful of Robert Bry," as indicated in the police report. (ECF No. 152 at 13). Again, the Court finds that this *post hoc* testimony is not determinative as to whether there was probable cause at the time the incident occurred. The Court further notes that Ms. Hoffman's testimony is contradicted by statements attributed to her in the police report. Finally, Plaintiff's self-serving statements that he acted in self-defense were included in the police report and considered by the prosecutor when he decided to pursue charges against Plaintiff. Ultimately, the Court finds that

the Frontenac Police had probable cause to believe that Plaintiff had committed the crime of domestic assault—second degree based upon finding Robin hiding behind a dumpster, in her nightgown, and bleeding. Because the Court concludes that the Frontenac Police Officers had probable cause, the Court grants summary judgment as to Count I.

b. Qualified Immunity

The law in the Eight Circuit is well-settled regarding the standard for qualified immunity.

Qualified immunity shields law enforcement officers from suit if they "[did] not violate [a] clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989) (first alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Under this "objective legal reasonableness standard," courts may not delve into the officers' subjective motivation for their actions. *Id.* (quoting *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727). However, qualified immunity allows officers to make reasonable errors, *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.1996), and protects "all but the plainly incompetent or those who knowingly violate the law," *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir.2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991

*Joseph*, 712 F.3d at 1226. Likewise, the Eighth Circuit has specifically outlined the test for qualified immunity with respect to Fourth Amendment claims for false arrest and malicious prosecution based upon an officers' lack of probable cause.

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir.2010) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir.1986)). An officer, however, is entitled to qualified immunity for a warrantless arrest if the arrest was supported by at least "arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir.2011) (quoting *Walker*, 414 F.3d at 992). Probable cause exists when "the totality of the circumstances at the time of the arrest '[is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.' " *Id.* at 523 (quoting *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir.2010)). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based on probable cause if the mistake is 'objectively reasonable.' " *Id.* (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir.2008)). The fact that the person arrested is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir.1976). Whether a law

enforcement officer had probable cause at the time of arrest is a question of law. *Fisher,* 619 F.3d at 816.

*Joseph,* 712 F.3d at 1226-27.

Plaintiff argues that the Frontenac Police defendants are not entitled to qualified immunity because Plaintiff "was arrested upon an affirmation of probable cause that was based upon deliberate falsehoods." (ECF No. 152 at 23). Plaintiff claims that his arrest was conducted "in bad faith and in furtherance of a conspiracy directed at getting Mr. Bry and locking him up." (ECF No. 152 at 23). Further, Plaintiff claims that the evidence shows that "Frontenac destroyed hours of potentially relevant recordings (such as the recordings of Mr. Bry the several hours he sat in a holding cell, as well as dash-cam and interrogation room tapes), without prior review of those recordings." (ECF No. 152 at 23). Plaintiff maintains that "[t]his patent destruction of evidence—much of which was protected and should have been produced under *Brady v. Maryland*—provides further grounds to abrogate Frontenac's claimed qualified immunity." (ECF No. 152 at 23). Plaintiff states that qualified immunity does not protect "police officers who willfully violate and disregard standards and rules applicable to probable cause determinations and criminal investigations." (ECF No. 152 at 24). Plaintiff argues that the Frontenac Police are not entitled to qualified immunity because "no reasonable officer would believe that it was permissible to hatch a plan to falsify evidence against an innocent resident— and/or destroy exculpatory evidence—in order to get him locked up simply because of prior animus." (ECF No. 152 at 25) (citing *Moran v. Clark,* 359 F.3d 1058, 1060 (8th Cir. 2004)).

The Court holds that, even if there were not arguable probable cause, that the Frontenac Police Officers are entitled to qualified immunity. "[A]n official enjoys qualified immunity for an objectively reasonable judgment about probable cause that turns out to be incorrect." *Bowden*

- 13 -

*v. Meinberg*, No. 14-3074, 2015 WL 5011636, at \*4 (8th Cir. Aug. 25, 2015) (citing *Anderson v. Creighton,* 483 U.S. 635, 643–44 (1987)).

The Court holds that Defendant Police Officers are entitled to qualified immunity. The Court holds that there was arguable probable cause to arrest Plaintiff based upon the totality of the circumstances, including Robin's physical injuries, Robin hiding behind a dumpster clothed only in a nightgown, and finding bloody knives at the scene. As previously discussed, the undisputed evidence does not demonstrate that the Frontenac Police falsified their testimony and Police report. Further, Plaintiff has not shown that there was destruction of any evidence related to the arrest of Plaintiff. As addressed in detail with respect to Count VI, the undisputed material facts do not demonstrate that Frontenac Police Officers destroyed any evidence, particularly any exculpatory evidence. Therefore, the Court finds that the Frontenac Police Officers are entitled to qualified immunity and grants summary judgment to Defendants on that basis as well.

## 2. **Count II and Official Capacity Claims**[5]

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the

---

[5] As discussed with respect to Defendants' Motion to Dismiss, Plaintiff's claims against the Police Officer defendants in their official capacities should be treated as claims against the City of Frontenac. *See Elder–Keep v. Aksamit,* 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) ("[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."). Thus, to sustain an action against the Frontenac Police Officers in their official capacities, Plaintiff must prove that the City "*itself* caused the constitutional violation at issue." *Kuha v. City of Minnetonka,* 365 F.3d 590, 604 (8th Cir. 2003). Therefore, to establish the liability of an official acting in his official capacity, the plaintiff must prove that "a policy or custom [of the city] caused the alleged violation." *Rogers v. City of Little Rock,* 152 F.3d 790, 800 (8th Cir. 1998). The Court's discussion regarding the City of Frontenac's liability as to Count II also applies to all of Plaintiff's claims against the Frontenac Officer defendants in their official capacities. The Court grants summary judgment to the Frontenac Officer defendants for the same reasons discussed in this section.

Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. In *Monell v. Department of Social Services,* 436 U.S. 658 (1978), the Supreme Court held that a municipality is a "person" that can be liable under § 1983. *Id.* at 690. Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell,* 436 U.S. at 691; (2) an unofficial "custom," *id.* at 690–91; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989). *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).

In Count II, Plaintiff alleges that "Defendant the City acting by and through the policymakers for law enforcement in the City Police Department has had [sic] a policy or a custom and usage that caused the constitutional violations suffered by Mr. Bry." (SAC, ¶26).

a. Policy or Custom

To show a municipal policy, Plaintiff must identify "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal officer who has final authority regarding such matters." *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999)*; see also Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992) ("A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body.") (citing *St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)). In the alternative, Plaintiff must show that "a constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Marchant v. City of Little Rock, Arkansas,* 741 F.2d 201, 204 (8th Cir. 1984) (citing *Monell,* 436 U.S. at 690–691) (internal quotation marks omitted).

Plaintiff claims that the Frontenac Standard Operating Procedures ("SOP") violate Plaintiff's "rights by allowing destruction of evidence and thus denial of his meaningful access to the

courts." (ECF No. 152 at 17). Plaintiff notes that SOP 6-03 states that the holding facility will be recorded 24/7, but that after 30 days such recordings will be deleted. Plaintiff argues that SOP 6-03 does not state that holding facility recordings must be retained if they contain exculpatory evidence, which is a requirement under *Brady v. Maryland*, 373 U.S. 73 (1963). (ECF No. 152 at 17-18). Similarly, Plaintiff notes that SOP 6-03 does not require that holding facility records should be reviewed. (ECF No. 152 at 18). In turn, SOP 3-05 prohibits officers from erasing any video files from their patrol car recording systems, but does not prohibit the City of Frontenac from deleting video files without reviewing them first for evidentiary purposes. In addition, Plaintiff contends that Frontenac's SOPs never state that Frontenac Officers must tell the truth in their police reports, which Plaintiff claims "tacitly allows Frontenac Police to prepare wholly one-sided reports that result in the prosecution and punishment of the wrong individual." (ECF No. 152 at 18). Finally, Plaintiff argues that Frontenac's Domestic Violence SOP 5-11 requires Frontenac Officers to identify and arrest the primary physical aggressor. (ECF No. 152 at 19-20). Plaintiff claims that the Frontenac Officers incorrectly arrested Plaintiff, the victim, instead of Robin, the primary aggressor, without listening to the evidence. (ECF No. 152 at 20).

Assuming without holding that the SOPs are the official policies or customs of the City,[6] the Court nevertheless holds that Defendants are entitled to summary judgment on Count II. Plaintiff has not demonstrated that any SOP resulted in a deprivation of his constitutional rights. Although the Court has repeatedly expressed its concerns about Defendants' failure to attest to

---

[6] *See Dean v. County of Gage, Neb.*, 2015 WL 7967258, *6 (8th Cir. Dec. 7, 2015) (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("[T]he trial judge must identify those officials or government bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation.").

whether someone has reviewed the tapes and emails at issue, ultimately the uncontroverted material facts demonstrate that no evidence exists that would have supported Plaintiff's claims. The record contains no indication that any recording from the holding facility would have provided any evidence relevant to this case. Therefore, the Court holds that any alleged violation of SOP 6-03 did not violate Plaintiff's constitutional rights. Likewise, the Court notes that Plaintiff has not identified any constitutional deprivation he suffered by the Frontenac Police Officers' alleged failure to identify Robin as the primary aggressor, particularly because both Robin and Plaintiff were arrested. Plaintiff has not shown that adherence to SOP 5-11 would have altered his arrest and prosecution in any way. Finally, the Court holds that the failure to explicitly state in an SOP that police officers must tell the truth is not the basis of a constitutional violation. The undisputed evidence before the Court does not demonstrate that there was an explicit or tacit policy or custom for Frontenac Police Officers to lie in their reports. Absent such a showing, the Court finds that there is no constitutional violation and the Court grants summary judgment in the City of Frontenac's favor.

b. Failure to Train or Supervise

A local government may be subject to § 1983 liability for inadequate training of its employees where (1) the city's training practices were inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by the city; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injury. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (internal citations and quotations omitted). To satisfy the standard, Plaintiff must demonstrate "that in light of the duties assigned to specific officers ... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390; *Parrish,* 594 F.3d at 997-98.

Plaintiff argues that the Frontenac training is "clearly inadequate, as evidenced by the Frontenac Standard Operating Procedures that allow for the destruction of evidence – including exculpatory evidence – without any formal review process." (ECF No. 152 at 20-21) (noting that car video recordings are automatically overwritten after 30 days, interrogation room recordings are overwritten if the IT manager does not burn them to a disc; recordings of evidence of a crime (but not exculpatory recordings) must be retained under SOP 3-05). Further, Plaintiff contends that, pursuant to the SOPs, Frontenac Officers are not required to be "truthful in their statements and police reports." (ECF No. 152 at 21).

Although the Court has repeatedly expressed its concerns about Defendants' failure to attest to whether someone has reviewed the tapes and emails at issue, ultimately the uncontroverted material facts demonstrate that no evidence exists that a deficiency in the training of Frontenac Police Officers caused to suffer Plaintiff suffered an injury. The uncontroverted evidence does not demonstrate that any exculpatory evidence existed. Defendants have provided evidence that the dash cams on the police cars either were not pointed in the direction to capture the events of September 13, 2013 or that the dash cams were not turned on. (ECF No. 128 at 53-55). Defendants have also provided evidence that no on-person audio recordings ever existed. (ECF No. 128 at 56). Defendants further presented evidence to the Court that no custodial interrogations occurred and that Robin never made a statement confessing to the crime. (ECF No. 128 at 57). Also, there is no evidence that Officer Cody Loveless made telephone calls from the Frontenac Police Department to Sheila Hoffman and no evidence that such calls were

- 18 -

recorded. (ECF No. 128 at 52-53). As previously discussed, the undisputed evidence before the Court does not demonstrate that there was an explicit or tacit policy or custom for Frontenac Police Officers to lie in their reports. Absent such a showing, the Court finds that there is no constitutional violation and the Court grants summary judgment in the City of Frontenac's favor. In sum, the Court holds that the evidence before the Court requires the Court to grant summary judgment in favor of the City of Frontenac on Plaintiff's failure to train or supervise claims because there is no evidence that such a deficiency resulted in an injury to Plaintiff.

### 3. Count III

The essence of the cause of action for false arrest, or false imprisonment, is a person's confinement of the plaintiff, without legal justification. *Rankin v. Venator Grp. Retail, Inc.,* 93 S.W.3d 814, 819 (Mo. Ct. App.2002) (citing *Thomas v. M—R—A—,* 713 S.W.2d 570, 574 (Mo.App.1986)); *see also Highfill v. Hale,* 186 S.W.3d 277, 280 (Mo. 2006)("False imprisonment, also called false arrest, is the confinement, without legal justification, by the wrongdoer of the person wronged.") (citation omitted). "A person can be liable for false imprisonment if he encourages, causes, promotes, or instigates the arrest." *Highfill,* 186 S.W.3d at 280 (citing *Day v. Wells Fargo Guard Service Co.,* 711 S.W.2d 503, 505 (Mo. banc 1986); *Blue v. Harrah's North Kansas City, LLC,* 170 S.W.3d 466, 472 (Mo. Ct. App. 2005)). "Whether a person instigated an arrest is a fact-specific inquiry; there is no fixed test that may be applied." *Highfill,* 186 S.W.3d at 280 (citing *Smith v. Allied Supermarkets, Inc.,* 524 S.W.2d 848, 852 (Mo. banc 1975)).

In Count III for false arrest under Missouri law, Plaintiff alleges that "Defendants intentionally caused the detention, restraint and arrest of Mr. Bry against his will without probable cause to believe he had committed any crime." (SAC, ¶32).

The Court grants Defendants' Motion for Summary Judgment as to Count III for false arrest. As discussed herein, Defendants had probable cause to arrest Plaintiff based upon the facts known to the Frontenac Police Officers at the time. Therefore, the Court holds that Plaintiff's detention was legally justified and grants summary judgment in Defendants' favor. In the alternative, the Court holds that Defendants are entitled to qualified immunity because the officers had arguable probable cause to arrest Plaintiff, and the Court grants summary judgment to Defendants on that basis as well.

### 4. Count IV

The essential elements of a malicious prosecution claim in Missouri "are: (1) the commencement of a judicial proceeding against the plaintiff; (2) the instigation of the suit by the defendant; (3) the termination of the proceeding in plaintiff's favor; (4) the absence of probable cause for the suit; (5) malice by the defendant in instituting the suit; and (6) resulting damage to the plaintiff." *Joseph H. Held & Associates, Inc. v. Wolff,* 39 S.W.3d 59, 62–63 (Mo. Ct. App. 2001)(citing *Stafford v. Muster,* 582 S.W.2d 670, 675 (Mo. banc 1979); MAI 23.07 (1980 Revision)); *Diehl v. Fred Weber, Inc.,* 309 S.W.3d 309, 318 (Mo. Ct. App. 2010). "The plaintiff must prove all six elements to make a submissible case of malicious prosecution." *Diehl,* 309 S.W.3d at 318 (citing *Crow v. Crawford,* 259 S.W.3d 104, 114 (Mo. Ct. App. 2008)). "The nature of malicious prosecution actions has led courts to require "strict proof" of each element of the tort." *Crow,* 259 S.W.3d at 114.

In Count IV for malicious prosecution under Missouri law, Plaintiff alleges the "Officer Defendants either initiated the commencement of a prosecution against Mr. Bry, participated in the prosecution of Mr. Bry, or conspired with other Defendants and continue and prolong the prosecution of Mr. Bry, or failed to make efforts to stop the false prosecution of Mr. Bry when

- 20 -

they had a duty to do so." (SAC, ¶35). Plaintiff alleges that "[a]gents of Defendant City deliberately and purposefully misled the Prosecutor, resulting in false charges against Mr. Bry." (SAC, ¶40). Plaintiff contends that the Frontenac Police initiated the prosecution of Plaintiff by presenting facts to the prosecutor and then filing a warrant application with the circuit court in order to obtain a signature. (ECF No. 152 at 16). Plaintiff maintains that the Frontenac Police "played a fundamental and active role in the prosecution of Mr. Bry, and can and should be liable for the resulting unlawful prosecution." (ECF No. 152 at 16).

This Court has already held that Defendants had probable cause to arrest and prosecute Plaintiff based upon the facts known to the Frontenac Police Officers at the time. Therefore, the Court grants summary judgment in favor or Defendants on Count IV. In the alternative, the Court holds that Defendants are entitled to qualified immunity because the officers had arguable probable cause to prosecute Plaintiff, and the Court grants summary judgment to Defendants on that basis as well.

## 5. Count V

"To prove a civil conspiracy under § 1983, [plaintiffs] must show (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck,* 700 F.3d 340, 360–61 (8th Cir. 2012); *Dean,* 2015 WL 7967258, *5. Plaintiff maintains that the "evidence supports the conclusion that the City of Frontenac and its officers conspired with each other in effecting the false arrest and malicious prosecution by working together to make sure they could 'get [Mr. Bry] locked up.'" (ECF No. 152 at 28).

In Count V, Plaintiff alleges that the Officer Defendants "shared the general conspiratorial objective to deprive Mr. Bry of his civil rights by fabricating evidence against him, falsely arresting and jailing him, and contriving and encouraging false charges against him." Plaintiff claims that the co-conspirators had opportunities to intervene and prevent the deprivation of constitutional rights but took no action.

Because the Court previously concluded that the Frontenac Police Officers and the City of Frontenac did not violate the Fourth Amendment and did not effect a false arrest or malicious prosecution of Plaintiff, the alleged conspiracy also does not amount to a constitutional violation. *Bowden*, 2015 WL 5011636, at *4 (citing *Slusarchuk v. Hoff,* 346 F.3d 1178, 1183 (8th Cir. 2003)). Therefore, the Court grants summary judgment in favor of Defendants with respect to Count V.

## 6. Count VI

Plaintiff alleges that Defendant members of the "City Police Department conspired with each other to intentionally and maliciously violate [Plaintiff's] constitutional right of access to the courts as secured to him by the due process clauses of the Fourth and Fourteenth Amendments to the United States Constitution." (SAC, ¶49). Plaintiff further alleges that "Defendants shared the general conspiratorial objective to deprive Mr. Bry of his civil rights by fabricating evidence inculpating him, and suppressing and destroying evidence favorable to him. This includes that all recordings of Frontenac Police actions concerning the Incident were ... destroyed within 60 days of the Incident, despite Frontenac Police Standard Operating Procedures that directed such recordings should have been preserved during the pendency of the Criminal Case if not longer." (SAC, ¶50).

In his Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff stated that he

> received notice the afternoon of November 20, 2015, that this Court was denying his Second Motion for Sanctions. Due to the timing of entry of this Order, as well as the complexity and imminent (November 20) deadline for filing this Memorandum, Mr. Bry determined it was necessary to proceed with filing this Memorandum without taking full account of the Order or its impact. Mr. Bry anticipates modifying this Memorandum and accompany [sic] documents as the Order may require in a prompt fashion.

(ECF No. 152 at 29). To date, Plaintiff has not filed such a revised memorandum (despite the Court providing an explicit deadline for filing a supplemental memorandum) or requested leave to file such a memorandum. The Court, therefore, reviews this claim on the limited allegations and record before it.

Plaintiff argues that "Frontenac should not be rewarded for destroying evidence and withholding witnesses, thus preventing the other party from proving relevant evidence was destroyed." (ECF No. 152 at 29). Plaintiff claims that this alleged destruction of evidence alone provides a basis for denial of summary judgment. (ECF No. 152 at 29-30).

a. Elements Not Met

The Court holds that the undisputed evidence fails to establish a constitutional claim. The uncontroverted evidence does not demonstrate that any exculpatory evidence existed. Defendants have provided evidence that the dash cams on the police cars either were not pointed in the direction to capture the events of September 13, 2013 or that the dash cams were not turned on. (ECF No. 128 at 53-55). Defendants have also provided evidence that no on-person audio recordings ever existed. (ECF No. 128 at 56). Defendants further presented evidence to the Court that no custodial interrogations occurred and that Robin never made a statement confessing to the crime. (ECF No. 128 at 57). Also, there is no evidence that Officer Cody

- 23 -

Loveless made telephone calls from the Frontenac Police Department to Sheila Hoffman and no evidence that such calls were recorded. (ECF No. 128 at 52-53). Thus, based upon the evidence before the Court, the Court holds that Defendants did not violate Plaintiff's constitutional rights by conspiring to destroy evidence.[7]

b. Qualified immunity as to the Frontenac Police Officers

Further, the Court finds that the Frontenac Police Officer Defendants are entitled to qualified immunity as to Count VI. To overcome qualified immunity, plaintiffs must demonstrate both that "(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation." *Parker v. Chard,* 777 F.3d 977, 980 (8th Cir. 2015). Here, there is no evidence the Frontenac Police Officials were aware that they violated Plaintiff's clearly established rights. There is no evidence before the Court that the law was clearly established as to how long Defendant Police Officers should have retained the alleged tapes at issue. In order for a right to be clearly established, its contours "must be sufficiently clear that a reasonable person would understand that what he [or she] is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Retention of electronic

---

[7] Further, the Court notes that even if Defendants had failed to preserve electronically stored information, then the Court would still need to enter summary judgment in favor of Defendants. The Court finds that no evidence indicating that Defendants acted "with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Rather, the evidence indicates that the electronically stored information was taped over pursuant to a Frontenac SOP. Because there is no evidence of an intent to deprive another party of the use of this information, the remedies under Fed. R. Civ. P. 37(e)(2), including an adverse inference instruction, dismissal of this action, and default judgment are not available to Plaintiff. Under Fed. R. Civ. P. 37(e)(1), the Court is limited to "order measures no greater than necessary to cure the prejudice." Because an adverse instruction is not within the range of possible curative measures, the Court does not believe that any sanction imposed for the destruction of electronically stored information would affect the outcome of this claim. *See Stevenson v. Union Pacific Railroad Co.,* 354 F.3d 739, 745-46 (8th Cir. 2004) (quoting *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263, 268 (8th Cir. 1993) ("'whether the extent of a sanction is appropriate is a question peculiarly committed to the district court'").

recordings by police officers and departments is an evolving practice and the Court cannot state that the constitutional rights regarding this topic are well-settled. Rather than purposefully violating Plaintiff's constitutional rights, the evidence before the Court indicates that the Defendant Police Officers simply followed the policies or SOPs, which required taping over any tapes within a 30 day period. Because the Court finds that electronically stored information retention procedures have not been clearly established, the Court finds that the Defendant Police Officers are entitled to qualified immunity as to Count VI. *See Hollingsworth v. City of St. Ann*, 80 F. 3d 985, 992 (8th Cir. 2015) ("because it was not clearly established that McCallum's actions constituted excessive force, a reasonable officer was not on fair notice that his failure to intervene when McCallum deployed the Taser violated Hollingsworth's Fourth Amendment rights").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 101) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 127) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 18th day of December, 2015.

Ronnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**